## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

**JOSEPH BOCZEK, on behalf of**
**Himself and all others similarly situated,**

     **PLAINTIFF,**

**v.**                                  **CIVIL ACTION NO. 1:23-cv-43 TSK**

**PENTAGON FEDERAL CREDIT UNION**
**d/b/a PENFED,**

     **DEFENDANT.**

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO</u>**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## <u>INTRODUCTION AND BACKGROUND</u>

The district courts of West Virginia have been at the forefront nationally to recognize that Plaintiffs like Mr. Boczek state a claim when loan servicers like Defendant Pentagon Federal Credit Union ("PenFed") violate the West Virginia Consumer Credit and Protection Act (CCPA) when they continue to charge borrowers an additional fee simply for making their payment online or over the phone ("Pay-to-Pay Fees"). Class Action Complaint ("Compl.") (ECF No. 1) at ¶ 1. Specifically, in *Muhammad v. PNC Bank N.A.*, No. 2:15-cv-16190, 2016 WL 815289 (S.D. W. Va. Feb. 29, 2016) (Goodwin, J.), Judge Goodwin found that a plaintiff borrower who complained of a near identical Pay-to-Pay fee (that PNC Bank called a "speed pay fee") had sufficiently alleged a violation of CCPA section 46A-2-128(d) because the plaintiff had alleged the Pay-to-Pay fee collected was not authorized by agreement or statute. Judge Goodwin rightly recognized the Pay-to-Pay fees as "processing or transaction fees associated with the primary obligation," i.e. the loan, and noted that the "plaintiff was charged these fees in connection with his loan." *Muhammad*, at *3. Judge Goodwin therefore found that "these facts are enough to allege the speed pay fees were incidental to the loan" and to state a claim for violations of the CCPA. *Id.*

If that precedent were not enough to dissuade loan servicers from charging Pay-to-Pay fees in West Virginia, last year, the Fourth Circuit Court of Appeals, in *Alexander v. Carrington*, 23 F.4th 370 (4th Cir. 2022), held that (1) a servicer is engaged in debt collection when it collects Pay-to-Pay fees; (2) Pay-to-Pay fees qualify as "an amount" under the analogous FDCPA; (3) Pay-to-Pay fees are not "permitted by law" within the meaning of the FDCPA; and (4) in dicta, did "not reach" Carrington's argument that Pay-to-Pay fees are not incidental to the underlying debt (as Judge Goodwin already had) but found its argument "unpersuasive." *Id*. at fn. 2.

Though Defendant's Motion to Dismiss unsurprisingly attempts to characterize Mr. Boczek's claims as baseless and lacking substantive legal support, at least five other loan servicers faced identical claims, and made the reasoned decision to resolve them on a class-wide basis, paying hundreds of dollars in statutory damages per violation to the impacted West Virginia borrowers in class settlements that have been approved by this Court or the Southern District of West Virginia in recent years. *See Thacker v. PHH Mortgage Corp.*, Civil Action No. 5:21cv174 (N.D. W.Va. 2022); *Vannest v. Nationstar Mortgage, LLC, d/b/a Mr. Cooper*, Civil Action No. 5:21cv86 (N.D. W.Va. 2022); *Cox v. New Rez, LLC, d/b/a Shellpoint Mortgage Servicing*, Civil Action No. 3:20cv859 (S.D. W.Va. 2022); *Six v. Loancare, LLC, and Lakeview Loan Servicing, LLC*, Civil Action No. 5:21cv451 (S.D. W.Va. 2022); and *Prettyman v. U.S. Bank, N.A.*, Civil Action No. 5:22cv293 (N.D. W.Va. 2023).

Indeed, Mr. Boczek's claims are not novel, nor are the defenses that Defendant has raised. In addition to these civil opinions and settlements, the Consumer Financial Protection Bureau ("CFPB") and dozens of attorneys general have publicly concluded that the practice of charging these Pay-to-Pay fees is both unlawful and unfair. For example, in October 2021, the CFPB, which has authority to promulgate rules and interpretations under the analogous Federal Debt Collection Practices Act ("FDCPA"), filed an *amicus* brief in a matter before the Ninth Circuit explaining its position that Pay-to-Pay Fees are junk fees that violate federal law and policy. The CFPB explained:

> The FDCPA was designed to rein in unethical debt collectors, and [the FDCPA] specifically was designed to limit the amounts that debt collectors could try to collect from consumers. But under the district court's interpretation, debt collectors can collect additional fees, like the pay-to-pay fee at issue here, whenever no other law specifically prohibits them—leaving debt collectors with the power and discretion to try to collect additional fees during the collection process. This is particularly problematic given that consumers have no ability to shop around for a better deal. And it's not as if these pay-to-pay fees are necessary for debt collectors

to offer phone or online payment options that consumers might want, as it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail (which is typically the fee-free option). Pay-to-pay fees are thus most often just a way for the debt collectors to take advantage of consumers by trying to extract more money than they originally bargained for or reasonably expected to pay.

Brief of *Amicus Curiae* Consumer Financial Protection Bureau in Support of Plaintiffs-Appellants at 11, *Thomas-Lawson v. Carrington Mort. Servs.*, No. 21-55459 (9th Cir. Filed Oct. 21, 2021), ECF No. 22.

In June 2022, the CFPB issued an advisory opinion in which it "affirm[ed]" its position that collection of "pay-to-pay or 'convenience' fees, such as fees imposed for making a payment online or by phone," where those fees are not contractually or legally authorized, is an "unfair or unconscionable means to collect or attempt to collect any debt" prohibited by Section 808(1) of the FDCPA and the CFPB's regulations implementing that provision.

State attorneys general have likewise taken steps to crack down on these unlawful Pay-to-Pay fees. In January 2021, a coalition of 33 state attorneys general, including West Virginia's, intervened to object to a settlement in a class action lawsuit against the mortgage loan servicer PHH Mortgage Corporation in which the settlement purported to allow PHH to continue to charge Pay-to-Pay Fees that are not authorized by borrowers' loan agreements. The New York Attorney General, speaking for the coalition, condemned the fees as unlawful:

When Americans utilize online or phone payments to pay off their monthly mortgages, [mortgage servicer] PHH benefits, but instead of passing those savings on to homeowners PHH charged illegal fees and increased costs for nearly one million Americans," said Attorney General James. "PHH's sole purpose is to collect and process homeowners' payments, which it already makes millions of dollars from each year. In the 21st century, when most Americans pay their bills online or by phone, to charge fees on top of what they are already being paid is not only unethical, it is unlawful."

For years, PHH charged nearly one million homeowners an illegal fee—ranging from $7.50 to $17.50—each time a homeowner made a monthly mortgage payment

3

online or by phone, despite most Americans paying their mortgages one of these two ways. Nowhere in these homeowners' mortgage contracts is there authorization for such fees and PHH does not charge "processing" fees for any other customers, including those who pay by check or those who set up automatic debt payments. Charging fees not mentioned in the mortgage contract is illegal and, under New York's mortgage servicing regulations, explicitly forbidden.

Press Release, N.Y. State Att'y Gen., *Attorney General James Leads Bipartisan Coalition Fighting to Protect Nearly One Million Homeowners from Unlawful Fees* (Jan. 29, 2021), https://ag.ny.gov/press-release/2021/attorney-general-james-leads-bipartisan-coalition-fighting-protect-nearly-one.

Despite this background of condemnation of Pay-to-Pay Fees from the courts and regulators, PenFed is nevertheless one of the few loan servicers in the United States still charging consumer borrowers extra Pay-to-Pay Fees when they make their loan payments online or over the phone. These Pay-to-Pay Fees are not authorized by loan agreements or statutes. Further, borrowers are paying a significant undisclosed markup for electronic payments - here up to $5.00 for transactions that likely cost less than thirty cents each. Like most other servicers, PenFed could offer electronic payment methods for free and still profit, as it costs PenFed far more to process payments received by mail than electronically, but PenFed instead has chosen to make millions by price gouging the financially vulnerable customers who need flexible payment options.

PenFed's motion to dismiss is filled with meritless arguments and mischaracterizations that have been rejected by West Virginia district courts, the Fourth Circuit, and many other courts across the country. Mr. Boczek's allegations provide an adequate factual basis for sustaining these claims, surviving a motion to dismiss, and following an ever-growing line of reasoning established in consumer protection law. Much of PenFed's argument relies on mischaracterizing its conduct and the nature of the Pay-to-Pay fee by purporting that it is an extracontractual agreement. This argument is weak, as fees such as these are incidental to the loan, and are not expressly authorized

either by Mr. Boczek's loan agreement or applicable law. In order for these Pay-to-Pay Fees to be charged legally under West Virginia law, they must be authorized by both. Because PenFed does not have the requisite authorization to charge these fees, PenFed is liable under the CCPA. *See* W. Va. Code § 46A-2-124, 127, and 128.

## ARGUMENT

## I.   Legal Standards

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order for a plaintiff's claims to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facially plausible claims are accompanied by facts that allow the court to draw a reasonable inference that the defendant is liable. *Id.* Those facts must move the claim beyond the realm of mere possibility. *Id.* "Labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## II.   Mr. Boczek States a Claim Under the CCPA.

### A.   PenFed engages in debt collection through collecting monthly auto loan payments.

In his complaint, Mr. Boczek alleges that PenFed is the holder and servicer of his automobile loan collecting his monthly payment (Compl. ¶¶ 18-19), therefore it engages in debt collection and falls squarely within the definition of "debt collector" under the CCPA. PenFed attempts to divert the Court's attention from its debt collection by conflating the collection of the

Pay-to-Pay fee itself, which it argues is not itself a "claim," with PenFed's collection of the monthly payment due on the loan – clearly a "claim owed" or "alleged to be owed", while tacking on an incidental, extra Pay-to-Pay fee for processing the loan payment.

The CCPA defines a debt collector as "any person or organization engaging directly or indirectly in debt collection." W. Va. Code § 46A-2-122(d). Debt collection is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code § 46A-2-122(c). A consumer is defined as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a). The Supreme Court of Appeals of West Virginia has held that the definition of "debt collector" is to be applied broadly to "include any person who engages in the collection of debts, regardless of whether that person or organization is itself the creditor." *Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 908 (W. Va. 1980); *see also Patrick v. PHH Mortg. Corp.*, 937 F.Supp.2d 773, 782 (N.D. W. Va. 2013) (mortgage company qualified as debt collector under CCPA where plaintiffs alleged that defendant sought to collect from plaintiffs as alleged debt stemming from a mortgage note for the plaintiffs' property). Further, automobile loan servicers are "debt collectors" under the FDCPA and state debt collection counterparts, like the CCPA, where they "regularly collect debts owed."  *See Shannon v. Windsor Equity Group, Inc*., 2014 WL 977899, at *5 (S.D. Cal. 2014) (granting summary judgment for borrower on issue of whether auto loan servicer was a "debt collector" under the FDCPA and California's debt collection statute); *Johnson-Morris v. Santander Consumer USA, Inc.,* 194 F.Supp.3d 757, 766 (N.D. Ill. 2016) (denying auto loan servicer defendant's motion to dismiss for FDCPA claims regarding the defendant's collection of Pay-to-Pay fees); *Goodwyn v. Accredited Mgmt. Sols, LLC*, 2020 WL 9454965, at *7 (M.D. Fla. 2020) (auto loan collectors were "debt collectors" under the FDCPA

6

and the Florida debt collection statute, such that the complaint stated a valid claim upon which a default judgment was warranted).

If it were not already settled under the CCPA, the Fourth Circuit has specifically established that loan servicers are debt collectors when analyzing an analogous Maryland statute. *See Alexander v. Carrington Mortg. Servs, LLC*, 23 F.4th 370, 375 (4th Cir. 2022) ("And it is plain that, by collecting borrowers' monthly mortgage payments, Carrington is collecting a debt" under the MCDCA).[1]

> 1.   *Pay-to-Pay Fees themselves are not the "claim owed," but rather Mr. Boczek's automobile loan is the claim owed.*

In its attempt to confuse the issue of its obvious debt collection practices, PenFed cites cases where courts determined – in a wholly different context – that the entirety of the amount collected was for a "point of sale" purchase. Def. Br. at 4. *See Justice v. CNA Nat'l Warranty Corp.*, 346 F.Supp.3d 873, 878 (S.D. W. Va. 2018) (sale of GAP insurance policy with no additional obligation did not constitute a claim under the CCPA); *Hinkle v. Matthews*, 337 F.Supp.3d 674, 683 (S.D. W. Va. 2018) (same); *Hinkle v. Safe-Guard Prods. Int'l, LLC*, 839 F. App'x 770, 775 (4th Cir. 2020) (same); *Sizemore v. Nw. Mut. Life Ins. Co.*, No. 2:17-cv-00789, 2017 WL 3528851, at *6-7 (S.D. W. Va. Aug. 16, 2017) (again addressing CCPA claims in the insurance context). None of these cases cited by Defendant involved an existing loan obligation, nor facts that resemble Mr. Boczek's.

---

[1] Courts around the country have reached the same conclusion when reviewing analogous statutes. *See Lembeck v. Arvest C. Mortg. Co.*, 498 F.Supp.3d 1134 (N.D. Cal. 2020) (finding that loan servicers are debt collectors under the FDCPA); *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 641(7th Cir. 2007) (Detailing the role of a loan servicer and the rights and duties available to them, such as collecting monthly payments on a loan) (emphasis added). Loan servicing so obviously involves collecting debts that Congress had to create an express exemption for servicing activity in the FDCPA's definition of a debt collector. 15 U.S.C. § 1692a(6)(F)(ii); *see also* S. REP. 95-382, 3-4, 1977 U.S.C.C.A.N. 1695, 1698 (explaining that 1692a(6)(F)(ii) exemptions were intended to encompass "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing").

In fact, the Southern District of West Virginia correctly recognized that "a 'claim' is fairly and most logically read as a duty to pay money resulting from a prior engagement or agreement." *Justice*, 346 F.Supp.3d at 878. Here, Mr. Boczek entered into a Promissory Note with PenFed in June of 2022 to refinance the loan on his personal vehicle. Compl. ¶ 18. He takes issue with PenFed charging him Pay-to-Pay fees each time that that he makes his monthly payment via telephone. Compl. ¶ 19. Thus, Mr. Boczek's allegations under the CCPA arise from extra amounts collected from him by PenFed on a duty to pay money based on his prior contract.

Addressing a strikingly similar fact pattern, Judge Goodwin found that the assessment of Pay-to-Pay fees (also called convenience fees or speed pay fees) constitutes debt collection under the CCPA. *Muhammad v. PNC Bank N.A.*, 2016 WL 815289 at *3 (S.D. W. Va. Feb. 29, 2016) (finding that "in this case, the speed pay fees … are processing or transaction fees associated with the primary obligation. Based on the allegations and reasonable inferences drawn therefrom, the speed pay fees are paid to expedite crediting of payment on the principal obligation. The plaintiff was charged these fees in connection with his loan. These facts are enough to allege that the speed pay fees were incidental to the loan.") (quoting *Quinteros v. MBI Assocs., Inc.*, F.Supp.2d 434, 439 (E.D.N.Y. 2014) ("courts in the Second Circuit have applied [the FDCPA] to processing or transaction fees similar to the one at issue here, even though those fees were not penalties or connected to the underlying debt or the amount of principal owed")).

The *Muhammad* opinion deals directly with the types of fees involved in Mr. Boczek's case: fees charged for making a loan payment via telephone or online. Judge Goodwin's decision should guide this Court in finding that PenFed is engaged in debt collection here.

2.    *PenFed's collection of the Pay-to-Pay Fee is "collection" under the CCPA.*

Defendant next argues that there was no "collection" of the Pay-to-Pay Fee because there was no attempt to "collect" the fee, as it had already been paid and there was no "solicitation" of

the claim. Def. Br. at 5. This argument is similarly misplaced. The CCPA, section 46A-2-122(c) defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." § 122 (c).

Defendant sought and obtained payment for the Pay-to-Pay Fee while receiving payment for Mr. Boczek's automobile loan. Such conduct is, by definition, "collection" under § 122(c) of the CCPA. There is no requirement that "collection calls" be placed or "collection letters" be sent in order for conduct to fall within the definition of the statute.

PenFed's reliance on *Chirchir v. Citizen's Bank, N.A.*, No. 3:20-0416, 2022 WL 407091 (S.D. W. Va. Feb. 9, 2022) is unavailing. In *Chirchir*, the court assumed without deciding that the defendant mortgage servicer was a debt collector for purposes of the CCPA but found that the actions taken by the servicer *after* the loan was paid in full were not collection attempts under the Act. *Chirchir*, 2022 WL 407091, at *8 ("any alleged 'unfair or unconscionable means' by Plaintiff did not occur while collecting or attempting to collect Plaintiff's debt. The debt was already paid.")

Defendant also cites *Rice v. Green Tree Servicing, LLC*, 3:14-CV-93, 2015 WL 5443708 (N.D.W. Va. Sept. 15, 2015), in support of their argument that there was no "collection" of the Pay-to-Pay Fee, but this reliance is misplaced. *Rice* involved a home loan that was refinanced multiple times, and a loan agreement that required the plaintiff to maintain private mortgage insurance ("PMI"). Plaintiff brought suit, alleging that the defendant violated the CCPA by sending monthly billing statements each month that contained "false representations" about the amount due. The court rejected this argument because it found no basis for any false representation, but did not address the issue of whether the conduct constituted "collection" efforts under the CCPA.[2]

---

[2] A third case cited by PenFed, *Weber v. Wells Fargo Bank, N.A.*, 3:20-CV-48, 2021 WL 833949 (N.D.W. Va. Mar. 4, 2021), likewise provides little guidance on the issues here. *Weber* merely stands for the requirement that in order to

**B.      Mr. Boczek Adequately Alleges Violations of Section 46A-2-128 of the CCPA.**

In West Virginia, "No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128. "Without limiting the general application of the foregoing, the following conduct is deemed to violate this section[.]" *Id*. Section 128 then provides a list of six types of conduct that are deemed to be unfair or unconscionable. *Id*. at § 128(a)-(f). Mr. Boczek pleads allegations that involve two of these sections, 128(c) for "the collection or the attempt to collect from the consumer all or part of the debt collector's fee or charge for the services rendered" and 128(d) for "the collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principle obligation[.]" *Id*. at 128(c) and (d). Conduct under either section is violative of the CCPA. *Id*.

       1.     *Collection of a Pay-to-Pay Fee is conduct under Section 128(c) that is deemed to violate the CCPA.*

PenFed does not address whether its conduct falls under section 128(c). PenFed's silence on section 128(c) conduct is understandable considering it argues that the Pay-to-Pay fee was a separate processing service offered to Mr. Boczek. Indeed, PenFed's argument that these payments were the result of "voluntarily choos[ing] to make a payment by a specific method" puts the conduct of collecting Pay-to-Pay fees for processing monthly loan payments squarely within the conduct of section 128(c). *See* Def. Br. at 1. (arguing that "Charging a one-time convenience fee to consumers who initiate contact and voluntarily choose to make a payment by a specific method is simply not the type of conduct that is governed by the relevant provisions of the WVCCPA.") By charging and collecting Pay-to-Pay fees, PenFed passed along its costs for processing monthly

---

be liable as a debt collector under the FDCPA, the loan must have been in default when acquired. There is no such "loan in default" requirement under the CCPA, and thus *Weber* is wholly inapplicable to this discussion.

car loan payments to Mr. Boczek. This conduct is plainly the collection of PenFed's charge for services rendered.

Defendant attempts to evade liability under § 128(c) or (d) by asserting that Mr. Boczek does not plead that the fee is "incidental" to the auto loan debt. *See* Def. Br. at 7. This argument is addressed below with regard to Section 128(d), but for purposes of Section 128(c) there is no such exception for this conduct. PenFed's collection of Pay-to-Pay fees is plainly illegal under Section 128(c) as a part of the debt collection charge, as PenFed is clearly passing along the entirety of its payment processing costs, alleged to be roughly 30 cents (Compl. ¶ 15) and then up-charging the costs by more than 1500% and collecting the additional $4.70 as profit.

    2.    *Collection of a Pay-to-Pay Fee is conduct under Section 128(d) that violates the CCPA.*

PenFed, in large part, relies on its argument that Mr. Boczek does not "plead that the fee is 'incidental' to the auto loan debt[,]" but instead "arises from Plaintiff's separate request for special optional services from PenFed." *See* Def. Br. at 7. In addition to the *Muhammad* court's rejection of this argument, *supra*, and the Fourth Circuit's suggestion that it would do the same if pressed, *See Alexander*, *supra*, at fn. 2, courts around the country overwhelmingly hold that Pay-to-Pay Fees are incidental to the underlying debt and thus cannot be regarded as a separate transaction. *See Caldwell v. Freedom Mortg. Corp.*, No. 19-cv-2193, 2020 WL 4747497, at *3 (N.D. Tex. Aug. 14, 2020) ("Making a debt payment method and its related fee optional does not insulate it against a relationship to the debt"); *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F.Supp.3d 1134, 1136 (N.D. Cal. Nov. 3, 2020) (Pay-to-Pay "fee is incidental to the payment of the principal obligation. … The borrower's purpose in using the IVR system – and so incurring the IVR fee – is to make their mortgage payment"); *Fusco v. Ocwen Loan Serv. LLC*, Case No. 20-cv-80090, 2020 WL 2519978, at *2 (S.D. Fla. Mar. 2, 2020); *Langston v. Gateway Mortg. Group*, No. 5:20-cv-01902-VAP-KKx,

2021 WL 234358, at *2 (C.D. Cal. Jan. 15, 2021); *Elbert v. Roundpoint Mortg. Serv. Corp.*, No. 20-cv-00250-MMC, 2020 WL 6940941, at *3 (N.D. Cal. Nov. 25, 2020); *McWhorter v. Ocwen Loan Serv., LLC*, No. 2:15-cv-01831, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017) ("*McWhorter I*"); *Torliatt v. Ocwen Loan Serv., LLC*, No. 19-cv-04303-WHO, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020); *Barnett v. Caliber Home Loans, Inc.*, No. 2:19-cv-309, 2020 WL 5494414, at *3-4 (S.D. Tex. Sept. 10, 2020); *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F.Supp.3d 757, 765 (N.D. Ill. 2016); *Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 (RRM)(VVP), 2010 WL 3824151, at *3-4 (E.D.N.Y. Sept. 23, 2010); *Quinteros v. MBI Assocs, Inc.*, 999 F.Supp.2d 434, 439 (E.D.N.Y. 2014); *Liable v. Rockport Financial, LLC*, No. 4:15-CV-00306-ERW, 2015 WL 4771664, at *3 (E.D. Mo. Aug. 12, 2015); *Simmet v. Collection Consultants of California*, No. CV 16-02273-BRO, 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-cv-990-LJO-BAM, 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016) (denied motion for judgment on pleadings); *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-SPW-CSO, 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016), *report and recommendation adopted*, No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016).

The Florida cases that PenFed cites to the contrary are inapplicable and fundamentally flawed because the courts in those cases misguidedly analyzed (with the agreement of the plaintiff) the issue framed as whether the convenience fee itself was a debt, instead of whether added fees were incidental to an already existing debt obligation. *See, e.g., Turner v. PHH Mortgage Corp.*, 467 F.Supp.3d 1244, 1246 (M.D. Fla. 2020) ("The Court agrees these **convenience fees are not debts** owed another as contemplated under the acts because they were for a separate service offered by PHH.") (emphasis added). Additionally, two recent Florida district courts entered findings of

12

fact and conclusions of law in favor of plaintiffs' FDCPA claims and entered final judgment against a loan servicer for collecting Pay-to-Pay fees in violation of the FDCPA. *See Booze v. Ocwen Loan Servicing, LLC*, 2023 WL 5026984 (S.D. Fla. Aug. 1, 2023); *Glover v. Ocwen Loan Servicing, LLC*, 2023 WL 5026826 (S.D. Fla. Aug. 2, 2023).

Nothing in the text of the CCPA requires that "incidental fees" must themselves also be "debt." Instead, Pay-to-Pay fees are incidental to the obligation creating the debt – here, Plaintiff's auto loan. The Court should follow the vast majority of courts above, including the Southern District of West Virginia, who recognize that the Pay-to-Pay Fee is incidental to the auto loan debt and therefore the "claim" at issue.

        *3.    Mr. Boczek's claims are not preempted by the NCUA.*

Defendant next contends that Plaintiff's claims are preempted by the NCUA, an argument that can readily be dispensed of given both the strong presumption against preemption and the plain language of the federal regulation which PenFed argues displaces Plaintiff's right to relief here. There are three situations in which preemption may be found under the Supremacy Clause:

> (1) when Congress has clearly expressed an intention to do so ("express preemption"); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"); and (3) when a state law conflicts with federal law ("conflict preemption").

*College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005). The *College Loan Corp.* court further explained that in any preemption analysis, the "'starting presumption,' is that 'Congress does not intend to supplant state law.'" *Id.* at 597. In *O'Neal v. Capital One Auto Finance*, Judge Bailey found that the presumption against preemption is in "full force" in a CCPA case because of the history of the State's protection of West Virginians in this arena:

> The Supreme Court articulated a simple test for application of the presumption against preemption: the historic presence of state law in an area. This is the test even if the

> Federal Government has regulated the area for more than a century. Thus, the ***presumption against preemption*** as full force here – even though the federal government has regulated national banks for more than a century – because the ***doctrine would displace state consumer-protection statutes***, which fit squarely within the States' traditional police powers to protect the well being of their own citizens.

*O'Neal v. Capital One Auto Fin., Inc.*, 3:10-CV-40, 2011 WL 4549148, *3 (N.D. W. Va. Sept. 29, 2011) (emphasis added), quoting *Wyeth v. Levine*, 555 U.S. 555 (2009)). *See also Smith v. BAC Home Loans Serv., LP*, 769 F.Supp.2d 1033, 1038 (S.D. W.Va. 2011) (same). Further, "the presumption against preemption is amplified when federal law does not address the subject regulated by state law and would leave a plaintiff without a remedy." *O'Neal*, 2011 WL 4549148 at *3 (*see also Anderson v. Sara Lee Corp.*, 508 F.2d 181, 192 (4th Cir. 2007) (holding that presumption against preemption is "stronger still against preemption of state remedies … when no federal remedy exists")). The NCUA provides no such remedies here for plaintiffs such as Mr. Boczek, who have had illegal fees collected from them for making their loan payment over the phone. Because no such remedy exists under federal law *or* under the NCUA, the general presumption against preemption in this context is particularly strong.

PenFed argues that the specific type of preemption involved in this case is field preemption: "when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation." *College Loan Corp.*, 396 F.3d 588, 595-96; Def. Br. at 9 ("Congress clearly intended for the federal government, through the NCUA Board, to occupy – to the exclusion of state law – the entire field of regulating the terms and conditions of loans issued by federal credit unions.") "Field preemption applies only where the federal scheme of regulation of a defined field is so pervasive that Congress must have intended to leave no room for the states to supplement it." *O'Neal*, 2011 WL 4549148 at 3 (quoting *City of Charleston, S.C. v. A Fisherman's Best, Inc.*, 310 F.3d 155, 169 (4th Cir.2002)).

Defendant is wrong, as Congress clearly did not intend to occupy the field when it promulgated the regulation on which PenFed relies for its preemption argument. In turn, the CCPA in its application to these allegations does not attempt to supplement the area that is occupied by the NCUA in 12 C.F.R. § 701.21(b)(1)(i). The section cited by PenFed provides that the NCUA preempts state laws concerning the "(C) Closing costs, application, origination, or other fees[.]" *Id*. This Court, when addressing an analogous situation, found that the CCPA was not preempted by federal regulation where the CCPA did not attempt to regulate fees that were permitted by the borrower's agreement with the lender. *Padgett v. OneWest Bank, FSB*, CIV.A. 3:10-CV-08, 2010 WL 1539839, at *11 (N.D.W. Va. Apr. 19, 2010); *see also Smith*, 769 F. Supp. 2d at 1047 (finding that defendant "was required in this case to rebut the basic assumption that Congress does not cavalierly displace the States' protection of their citizens through generally applicable consumer-protection statutes. The presumption against preemption is fortified in this case because no federal remedy exists for the plaintiffs in these circumstances. [Defendant] has fallen far short of rebutting that presumption[.]").

The portion of the regulation that PenFed cites in support of its argument that the Pay-to-Pay fees charged to Plaintiff are to be considered "other fees" that are regulated by the NCUA relates to "rates of interest and amounts of finance charges." 12 C.F.R. § 701.21(b)(1)(i). This argument fails because the Pay-to-Pay Fee is neither a "rate of interest" nor a "finance charge," but an additional fee tacked on to Mr. Boczek's monthly loan payment. The federal regulation plainly does not involve these types of fees – if Congress intended to regulate these types of fees, they would have specifically stated that intent. *See id*. (regulation specifically mentions interest rate changes and indices, late charges, closing costs, and fees associated with loan applications and originations). Grouping Pay-to-Pay fees into the very general language of "other fees" under a

15

section that does not involve the types of fees at issue in this case requires a generous reading of the regulation and a wide interpretation of Congressional intent.

Defendant also argues that "Congress vested exclusive authority in the NCUA Board to regulate the rates, terms, and conditions of repayment for loans issued by federal credit unions." *See* Def. Br. at 9. By citing the regulations providing the NCUA Board with its authority, PenFed hopes to group these Pay-to-Pay fees into the most general language that can be found in the regulation: "other fees." *Id*. This argument fails for two reasons. First, the language of the regulation it cites that precedes "other fees" does not involve, even in a generous reading, the types of fees at issue in this case. Second, the language contained in the cited regulation is not specific enough to be a clear expression of Congress's intent to preempt the field.

Rather, the scope of state law preemption language in the NCUA, 12 C.F.R. § 701.21(b)(2), is narrow and is significantly narrower than the state law preemption language in the a similar statute, the National Banking Act ("NBA"), 12 C.F.R. § 7.4008.  Analyzing whether the CCPA was preempted by the broader scope of the NBA in *O'Neal*, Judge Bailey noted that "[s]ignificantly, this clause [7.4008] makes no mention of debt collection laws" and in fact, contained a savings clause sparing state debt collection statutes from preemption. *O'Neal,* 2011 WL 4549148, at *5. Similarly, the NCUA's provides an express intent *not* to preempt state debt collection law in section 701.21(b)(3):

> Except as provided by paragraph (b)(1) of this section, it is not the Board's intent to preempt state laws affecting aspects of credit transactions that are primarily regulated by Federal law other than the Federal Credit Union Act, for example, state laws concerning credit cost disclosure requirements, credit discrimination, credit reporting practices, **unfair credit practices, and debt collection practices**.

12 C.F.R. § 701.21(b)(3) (emphasis added). The NCUA's savings clause is similar to the NBA's savings clause, where again, Judge Bailey noted as further evidence of legislative intent not to

preempt state debt collection laws, stating "Courts of Appeals have interpreted this savings clause provision to include those state debt collection laws that regulate the means by which national banks collect their debts, not just the right to collect." *O'Neal,* 2011 WL 4549148, at *5 citing *Aguayo v. U.S. Bank*, 653 F.3d 912 (9th Cir. 2011); *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 282–83 (6th Cir. 2009). Clearly there can be no preemption here where the express language of the NCUA saves state "debt collection" laws from preemption.

In addition to this express language, Pay-to-Pay fees are, as discussed *supra*, an attempt by debt collectors, like PennFed, to recoup their own collection costs along with added profit. This manner of "[c]ollection costs" is also expressly not preempted by the NCUA. 12 C.F.R. § 701.21(b)(2)(iii)(A).

Because the federal regulation does not "clearly" occupy the field of regulating these types of fees collected from Mr. Boczek, Defendant has not met the heavy burden of rebutting the strong presumption against preemption and PenFed's preemption argument fails.[3]

### C.     Mr. Boczek Adequately Alleges Violations of Section 46A-2-127 of the CCPA.

Plaintiff's Complaint alleges that PenFed charged him "a $5.00 fee for making monthly payments over the telephone." Compl. ¶ 19. In West Virginia, a debt collector may not add fees to an existing obligation unless such fee is authorized by both agreement and statute. *See* W. Va. Code § 46A-2-127(g) ("No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims… Without limiting the general

---

[3]     Plaintiff's research has unearthed no cases that specifically address field preemption with respect to the NCUA and its interplay with state consumer protection statutes such as the CCPA. Apparently Defendant is unaware of any such cases either, as it did not cite a single case in support of its argument that the NCUA fully occupies the entire field of regulating the terms and conditions of loans issued by federal credit unions. *See generally*, Def. Br. at 9-10. However, many courts, including courts in the Northern District of West Virginia, have addressed field preemption in analogous situations. When analyzing the NBA, the Supreme Court of the United States has determined that "the NBA does not have field-preemptive force such that states may not regulate national banks at all." *O'Neal,* at *3, citing *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007).

application of the foregoing, the following conduct is deemed to violate this section: … (g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not be legally added to the existing obligation[.]")

Throughout its Motion, PenFed recites the introductory sentences of the CCPA, repeatedly stating that Plaintiffs has not "alleged fraud and deception with particularity." This focus is misplaced, however, considering that Section 127 provides a list of conduct, without limitation to its general application, that is deemed "fraudulent, deceptive or misleading" under the statute. *See*, *McNeely vs. Wells Fargo Bank*, NA, 115 F.Supp. 3d 779, 787 (S.D. W.Va. 2015) ("the statute lists conduct that is deemed to violate [WVCCPA]"). Among those examples is the adding of "attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added ot the existing obligation." *Id*. Notably, this is the same statutory construction of "including but not limited to" that is observed in Section 128 of the CCPA. Nowhere in § 127 does it require a plaintiff to independently plead that the defendant's conduct was fraudulent, deceptive or misleading – the statute's subsections provide examples of conduct that is violative of the section on its own.

PenFed makes a last-ditch attempt to dismiss Mr. Boczek's claims as insufficient under the pleading standards required under 9(b) by citing *Stanley v. Huntington Nat. Bank*, 1:11CV54, 2012 WL 254135 (N.D.W. Va. Jan. 27, 2012), *aff'd*, 492 Fed. Appx. 456 (4th Cir. 2012) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999). These standards require that a plaintiff make claims with sufficient particularity that, with the facts alleged, a court may infer that a violation of the CCPA has occurred. Mr. Boczek has pled that (1) he entered into a Promissory Note to refinance the loan on his personal vehicle with PenFed; (2) PenFed charged

him $5.00 fees for making payments via telephone; (3) the Promissory Note did not permit PenFed to charge such fees to him; and (4) PenFed, in doing so, passed the costs of collecting the monthly loan payment onto the consumer. Compl. ¶¶ 15, 18-20. These facts are more than sufficient to infer that PenFed has violated the CCPA – they lay out a specific predicate violation of the CCPA that tracks the violative conduct written in the statute..

Plaintiff has sufficiently pled a violation of W. Va. Code § 127(g) by providing the factual allegation that PenFed, at several different occasions when collecting his loan debt, added a $5.00 charge to his loan payment. These allegations are all that are required for stating a claim against Defendant at this stage of the litigation, and PenFed's attempt to add pleading requirements in order to dismiss Mr. Boczek's claims lacks foundational support.

### D.     Mr. Boczek Adequately Alleges Violations of Section 46A-2-124 of the CCPA.

Section 124 of the CCPA prohibits any "threat to take any action prohibited by this chapter or other laws regulating the debt collector's conduct." W. Va. Code § 46A-2-124(f). Mr. Boczek alleges actions prohibited by other sections of the CCPA, but PenFed argues there is no allegation of "threat or coercion (actual or attempted) by PenFed." Def. Br. at 12.

Although Section 124 is titled "Threat or Coercion," there is no requirement under Section 124(f) that there be any coercion on the part of the debt collector, a mere threat to take action prohibited by the CCPA is enough. In support of its argument, PenFed cites two cases, *Hill v. SCA Credit Servs. Inc.*, No. 5:14-cv-29565, 2015 WL 1808930, at *4 (S.D. W. Va. Apr. 21, 2015) and *Patrick v. Teays Valley Trs., LLC*, 2012 WL 5993163, at *16 (N.D. W. Va. Nov. 30, 2012). In both *Hill* and *Patrick*, the district courts found that there was no proper allegation of violation of a separate section of the CCPA to be actionable under Section 124. *See id.* (no conduct alleged that violated the CCPA).

19

Here, Mr. Boczek has stated claims of violations of Sections 127(g), 128(c), and 128(d) of the CCPA, which is different than the plaintiffs in *Hill* and *Patrick*. Here, Mr. Boczek does not merely allege that PenFed *threatened* to violate the CCPA – it actually *did* violate the CCPA by collecting the illegal Pay-to-Pay fees from him. If section 124 requires Mr. Boczek to identify a "threatening statement" even though no such language exists in section 124(g), that is a factual question more properly addressed at summary judgment. But for his part, Mr. Boczek alleges that he was not paying the $5.00 processing fee as a gratuity to PenFed, but rather based on PenFed's representation that the fee was required for him to make his loan payment by phone. These allegations are more than sufficient to overcome PenFed's motion to dismiss as to Section 124.

## CONCLUSION

Defendant PenFed presents no basis in law or fact for this Court to reverse course form the decisions already issued by Judge Goodwin of the Southern District of West Virginia in *Muhammad*, the Fourth Circuit in *Alexander*, and courts around the country finding that Pay-to-Pay Fees violate not only the CCPA but analogous consumer protection statutes, and that Plaintiffs like Mr. Boczek state a claim under these circumstances. These courts are in the majority and in line with the sound reasoning of the CFPB and Attorneys General, including our own, to recognize that these Pay-to-Pay Fees are unfair and illegal. Defendant's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Jonathan R. Marshall*
**Jonathan R. Marshall (WVSB #10580)**
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 facsimile
jmarshall@baileyglasser.com

Patricia M. Kipnis (WVSB #12896)

Bailey & Glasser, LLP
923 Haddonfield Road, Suite 300
Cherry Hill, New Jersey 08002
pkipnis@baileyglasser.com

*Attorneys for Plaintiff*