# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG DIVISION

**JOSEPH BOCZEK, on behalf of**
**himself and all others similarly situated,**

    **Plaintiff,**

**v.**                                                       **Civil Action No. 1:23-cv-43 TSK**

**PENTAGON FEDERAL CREDIT UNION**
**d/b/a PENFED,**

    **Defendant.**

## PLAINTIFF JOSEPH BOCZEK'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

    I.    The Proposed Class is Ascertainable. .................................................................... 4

        A.    PenFed repeatedly confirmed that the class contains only consumer loans ............ 4

        B.    Plaintiff has provided an ascertainable method of ensuring that class members are West Virginia residents ................................................................................................ 6

        C.    Class members' claims, including those under Sections 127 and 124 of the WVCCPA which are derivative of the Section 128 claims, are uniform .......................... 8

    II.    Plaintiff's claims are typical of those of the class and do not involve individualized allegations of fraud or threats ........................................................................................ 8

    III.    Plaintiff has established predominance and superiority. ........................................... 9

CONCLUSION ..................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adkins v. Midland Credit Mgmt.*,
  C-5:17-041017, 2019 WL 1549712 (S.D. W. Va. Apr. 9, 2019) ............................................9

*Adkins v. Midland Credit Mgmt., Inc.*,
  No. 5:17-cv-04107, 2019 WL 1370872 (S.D. W. Va. Mar. 26, 2019) ..................................10

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) ...............................................................................................................10

*In re Alford Chevrolet-Geo*,
  997 S.W.2d 173 (Tex. 1999) ..................................................................................................10

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2023) .....................................................................................................7

*Edge v. Roundpoint*,
  No. 1-21-cv-122, 2024 WL 1349032 (N.D. W.Va. Mar. 29, 2024) (Kleeh, J.) ......................9

*Haynes v. Logan Furniture Mart, Inc.*,
  503 F.2d 1161 (7th Cir. 1974) ..................................................................................................6

*Hermida v. Archstone*,
  950 F.Supp. 2d 298 (D. Mass. 2013) .....................................................................................10

*Hughes v. Kore of Indiana Enter., Inc.*,
  731 F.3d 672 (7th Cir. 2013) ....................................................................................................5

*Kagan v. Gibraltar Sav. & Loan Ass'n*,
  35 Cal.3d 582, 676 P.2d 1060 (1984) ....................................................................................11

*Loughlin v. Amerisave Mortg. Corp.*,
  2018 WL 1896409 (N.D. Ga. Feb. 7. 2018) ............................................................................4

*Oakley v. Coast Prof., Inc*,
  570 F.Supp. 3d 365 (S.D. W. Va. 2021) ................................................................................10

*In re OnStar Contract Litig.*,
  278 F.R.D. 352 (E.D. Mich. 2011) ..........................................................................................4

*Schorr v. Countrywide Home Loans, Inc.*,
  697 S.E.2d 827, 287 Ga. 570 (Ga. 2010) ..............................................................................10

*Schulken v. Wash. Mut. Bank*,
    No. 09-cv-02708, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ...................................................6

*Sheridan v. Ally*,
    No. 5:23-cv-00616, 2025 WL 2055556 (S.D. W. Va. July 22, 2025) ......................................3

*Sheridan v. Ally*,
    No. 5:23-cv-00616, 2025 WL 2055750 (S.D. W. Va. July 22, 2025) ..............................3, 5, 9

*Transamerican Refining Corp. v. Dravo Corp.*,
    139 F.R.D. 619 (S.D. Tex. 1991) ...........................................................................................10

*United States v. Mendoza*,
    464 U.S. 154, 104 S.Ct. 568 (1984) .........................................................................................8

**Statutes**

**Electronic Fund Transfer Act** ...........................................................................................................6

**Legal Remedies Act** .........................................................................................................................11

**Massachusetts Consumer Protection Act** ......................................................................................10

**W. Va. Code 46A-5-101(1)** ..............................................................................................................11

**W. Va. Code §46A-2-122(b)** .............................................................................................................5

**W. Va. Code § 46A-5-108** ..............................................................................................................10

**West Virginia Code §46A-2-124(f)** ..................................................................................................2

**West Virginia Code §46A-2-127(d)** .................................................................................................2

**West Virginia Code §46A-2-127(g)** .................................................................................................2

**West Virginia Code §46A-2-128(d)** .................................................................................................1

**West Virginia Consumer Credit and Protection Act (WVCCPA), W. Va.
Code §§46A-2-128(c)** ..................................................................................................................1

**WVCCPA** ................................................................................................................................*passim*

**Other Authorities**

**Fed. R. Civ. P. 23(a)(1)** ...................................................................................................................10

**Rule 23** .........................................................................................................................................8, 10

**Rule 23(a) and –(b)(3)** .....................................................................................................................1

**Rule 23(a)(3)** ...........................................................................................................................8

**Rule 23(f)**.................................................................................................................................6

**INTRODUCTION**

In his motion for class certification, Plaintiff Joseph Boczek met his burden of demonstrating that – based almost entirely on Defendant PenFed's own records produced in discovery and PenFed's deposition testimony – the proposed class is ascertainable and readily meets the threshold elements of Rule 23(a) and –(b)(3). Plaintiff explained that the putative class contains 422 accounts.[1] to which PenFed charged one or more convenience fees from April 2019 through May 2024 and that the case is based entirely on Defendant's standardized practices, a standardized fee, and common claims for which Plaintiff and the class seek to recover uniform statutory penalties.

Defendant's opposition to Plaintiff's motion for class certification offers factually and legally flawed positions that do not present any bar to certification. If the class is certified, Plaintiff intends to prove (either at summary judgment or trial) that these fees violated multiple similar subsections of the West Virginia Consumer Credit and Protection Act (WVCCPA), W. Va. Code §§46A-2-128(c), -(d); -127(d), -127(g), -124(f) – all in exactly the same way as to Plaintiff and the class. This is because all the claims arise from PenFed's uniform conduct in its assessment of these fees as to Plaintiff and the class and do not depend on any individualized facts as to Plaintiff or any particular class member.

Specifically:

- PenFed violated West Virginia Code §46A-2-128(c), which prohibits a debt collector from collecting any portion of its debt collection fee for services rendered, when it assessed these convenience fees as to Plaintiff and the class.

- PenFed violated West Virginia Code §46A-2-128(d), which prohibits the collection of fees incidental to the principal obligation that are neither expressly authorized by any agreement creating or modifying the consumer-borrowers' auto loan debt and by statute or regulation, when it assessed these convenience fees as to Plaintiff and the class.

---

[1] As explained in his initial brief, Plaintiff has requested additional class data to expand the class temporally should this Motion be granted, which Defendant has agreed will be consistent with the data already produced.

- In violation of West Virginia Code §46A-2-127(d), PenFed directly misrepresented or implied the character, extent or amount of a claim against a consumer when it charged a fee that it could not lawfully collect;

- Similarly, in violation of West Virginia Code §46A-2-127(g), by engaging in the same conduct in its representations to its consumer-borrowers, PenFed directly misrepresented that an existing obligation of the consumer may be increased by the addition of service fees when in fact such fees or charges may not be legally added to the existing obligation.

- In violation of West Virginia Code §46A-2-124(f), by threatening to take action prohibited by West Virginia Code (i.e. the assessment of illegal convenience fees), PenFed violated this additional subsection of the WVCCPA.

Am. Class Action Compl., at ¶41. In other words, all of Plaintiff and the class's claims arise simply from PenFed's assessment of the subject convenience fees and its uniform representations (made through its pay statements and payment representatives) as to those fees.

Defendant's arguments that Plaintiff cannot prove his claims on a class-wide basis do not hold water. First, Plaintiff's claims are indeed ascertainable. Defendant itself confirmed numerous times at deposition that the class – and Plaintiff's claim specifically – is composed exclusively of "consumer" loans, rendering this supposed individual inquiry a non-issue. Defendant also explained at deposition how its own records can be used to ensure that the class is neither over- or under-inclusive of West Virginia borrowers who may have moved in or out of the state before or after paying the subject fees. And Plaintiff does not seek to certify any individualized claims for representations or threats that do not arise solely from PenFed's collection of the subject fees as set forth above.

Second, Plaintiff has demonstrated the elements of typicality, predominance, and superiority. Plaintiff's claims are typical of those of the class in that he does not bring claims based on any specific representations made to him but only claims common to the class. Common factual and legal issues predominate, all having to do with Defendant's conduct as to the assessment of

the convenience fees. And there is no question that litigating this case of uniform, small-value claims through the class action device is the superior, most efficient method of doing so.

Plaintiff envisions litigating the case as follows should the class be certified. First, the Court will need to determine whether Defendant is liable for violating any or all of the provisions of the WVCCPA at issue or whether Defendant instead has presented any defenses that may prevent a class-wide finding of liability. Plaintiff intends to ask the Court to find in his favor on these class claims as a matter of law on a motion for summary judgment, which will streamline the process significantly, and Plaintiff expects that Defendant will likewise seek judgment as a matter of law. Given that none of the evidence produced in discovery has altered the conclusions the Court reached at the motion to dismiss stage[2] as to whether the fees are permissible under Fourth Circuit and West Virginia law, Plaintiff expects to prevail on this affirmative summary judgment motion or, if necessary, at trial.[3] If the Court does find Defendant liable for these violations, it will then move on to determining whether and in what amount the consumer class-members should recover in actual damages (*i.e.,* refunded fees) and statutory penalties under the WVCCPA. These damages issues – i.e. the amount of the fees charged and the number of times the WVCCPA was violated are also perfectly suited to be decided on a classwide basis using Defendant's records. *See Sheridan*

---

[2] Defendant conveniently omitted the Court's motion to dismiss order in its recitation of the procedural history of this case. But again, the Court has already found that, at least at the pleading stage, PenFed is a debt collector, Plaintiff has plead violations of the WVCCPA arising from PenFed's collection of the convenience fees, and Plaintiff's claims are not preempted by National Credit Union Administration regulations. *See* MTD Op. (ECF No. 40). The evidence developed in discovery has only confirmed the facts alleged in the operative complaint.

[3] Defendant has pointed to the district court's denial of the parties' cross-motions for summary judgment in the *Sheridan* matter as a reason to deny class certification in this case. This is illogical for two significant reasons. First, Judge Volk certified a class in that matter on the same day he denied the summary judgment motions, thus recognizing that the class was certifiable despite necessitating a trial. And second, as Plaintiff explained in his initial briefing, summary judgment was denied in that case because of facts entirely absent in this case, namely that the fees are collected by third party vendors and not retained by the defendant debt collector, which that defendant relies on as its main defense in the case. *See Sheridan v. Ally*, No. 5:23-cv-00616, 2025 WL 2055556, at *3 (S.D. W. Va. July 22, 2025).

*v. Ally*, No. 5:23-cv-00616, 2025 WL 2055750, at *4 (S.D. W. Va. July 22, 2025) (certifying class upon recognizing defendant's spreadsheet identifies class member accounts and payments).

For these reasons and all those set forth and in Plaintiff's initial brief, Plaintiff asks the Court to certify the proposed class.

**I.    The Proposed Class is Ascertainable.**

Mr. Boczek has demonstrated that the proposed class is ascertainable because PenFed produced spreadsheets identifying the class members in reference to objective criteria, which PenFed's corporate representative confirmed at deposition. Specifically, the representative confirmed that the spreadsheets contained the population of secured consumer loans, unsecured consumer loans, and consumer credit card accounts identified by PenFed through analysis of its electronic records. *See* **Exh. A**, C. Martin Dep. at 139:6-149:19; 161:17-167:3. PenFed contends that the class is not ascertainable for three reasons, none of which is correct.

A.   <u>PenFed repeatedly confirmed that the class contains only consumer loans</u>

First, PenFed relies on cases outside of West Virginia and this Circuit to insist that the class cannot be certified because analyzing whether a specific obligation was incurred for "personal, family, or household purposes" is an individualized inquiry that turns on specific details.[4] But PenFed's own corporate designee witness repeatedly confirmed that the proposed class is composed of "consumer" loan accounts which are charged ACH convenience fees and are housed in the company's Hogan record system. *See* Martin Dep. at 25:7-16; 26:16-21; 29:13-17; 45:22-46:5; 51:23-52:3. PenFed testified that PenFed does not even issue "business credit cards," *id.* at

---

[4] None of the decisions cited by Defendant in which class certification was denied (in part or in full on this basis) involved products where the class-wide transaction was admitted to be a consumer transaction. *See, e.g.*, *In re OnStar Contract Litig.*, 278 F.R.D. 352, 380-81 (E.D. Mich. 2011) (proposed class attempted to exclude persons or entities who purchased vehicles primarily for commercial or business purposes; court found this would require individualized determination); *Loughlin v. Amerisave Mortg. Corp.*, 2018 WL 1896409, at *16 (N.D. Ga. Feb. 7. 2018) (no viable plan for determining whether class members' loan was for purpose of obtaining rental property and therefore covered under RESPA).

4

121:21-122:11, thus negating PenFed's argument that the small group of credit cards in the putative class might be a hybrid mix of consumer and business cards and alleviating any worry as to whether any class member's loan may have had a business purpose.[5]

PenFed's corporate designee further confirmed that Mr. Boczek's loan specifically is a consumer loan. *Id.* at 32:23-33:13. And, contrary to Defendant's representation, Plaintiff himself testified that the car has not been used for any business purposes and he has not sought reimbursement for any company for use of the car. **Exh. B**, Boczek Dep. at 42:5:43:10; 45:4-46:3.[6] Plaintiff has therefore met his burden of demonstrating that the class is composed of consumer loan accounts, as demonstrated by Defendant's own testimony. *See also Sheridan v. Ally Fin., Inc.*, No. 5:23-cv-00616, 2025 WL 2055750, at *4 (S.D. W.Va. July 22, 2025) ("The class definition is clear, objective, and based on readily identifiable criteria. The accompanying spreadsheet provides sufficient detail to identify class members who were injured in connection with the alleged wrongful conduct. As a result, determining class membership does not require individualized fact-finding.")

If it were not enough that PenFed has conceded that the class is composed exclusively of consumer loans, courts facing this challenge to class certification reject this argument when the likely nature of the debt can be determined from the type of creditor or its records. *See Hughes v.*

---

[5] PenFed concedes for compliance purposes it uses a member's address for state debt collection choice-of-law purposes and therefore is subject to West Virginia debt collection law and its definitions. Martin Dep. at 62:5-16. It is therefore subject to West Virginia debt collection claims as to the entire class.

[6] Notably, while Plaintiff always paid his auto loan payments from his personal account, it is irrelevant whether Plaintiff or any class member ever paid their consumer loan out of a personal or business account when it is undisputed that the loan itself is a consumer loan. Defendant rightly recognizes that the WVCCPA defines "claim" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." W. Va. Code §46A-2-122(b). The parties agree that the relevant obligations and transactions at issue in this litigation here are the putative class members' consumer auto loans.

*Kore of Indiana Enter., Inc.,* 731 F.3d 672, 677 (7th Cir. 2013) (reversing and remanding denial of class certification on Rule 23(f) appeal in case alleging that owners of ATMs failed to post notice on ATMs that they charged fee for their use, in violation of Electronic Fund Transfer Act; observing that, "it is unlikely that ATMs in bars are commonly used for business transactions"); *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (TILA class action should not be denied on this theory given "no indication that the commercial users of credit at this retail home furnishings establishment are other than minimal in the overall picture"); *Schulken v. Wash. Mut. Bank,* , No. 09-cv-02708, 2012 WL 28099, at *11 (N.D. Cal. Jan. 5, 2012) (rejecting argument that TILA class should not be certified because HELOCs at issue might not have been taken out primarily for personal use and noting if "that defense alone were sufficient to preclude class certification, there would be no class actions under TILA"). For these reasons, there is no question that the Court will be able to find that the class is composed of consumer loans.

    B. <u>Plaintiff has provided an ascertainable method of ensuring that class members are West Virginia residents</u>

PenFed next contends that the spreadsheet it provided identifying putative class members is potentially over and under-inclusive in that it included all consumer loans where a convenience fee was assessed for members who lived in West Virginia at the time the data was pulled, and therefore (a) might include members who moved to West Virginia just before the report was pulled when the member's transaction fee was paid in another state; and/or (b) might not include members who paid fees in West Virginia and then moved out of the state before the report was pulled.

Contrary to PenFed's representation, its deponent explained that the former group (the "overinclusive" group) could readily be removed from the class because PenFed tracks address changes and saves "promissory note documentation" about each member that allows them to run

6

additional queries, and the deponent confirmed they could perform these queries and remove those fees as appropriate:

> **Q. Okay. So you can do more queries and take some folks out if that were warranted depending on, like you said, if someone just moved from Florida and they had not paid a fee and any fee that paid was when there were still in Florida. They hadn't paid a fee as a West Virginia resident, you could conceivably remove that person from this chart; correct?**
> **A.  Yes, that's accurate.**

Martin Dep. at 149:20-150:4. *See also*, *id.* at 157:16-21 (confirming all application data still exists and that reports can be generated and compared between Hogan and FICO).

Removing "overinclusive" loans through queries that pull from loan origination (or promissory note addresses) and address change records from a relatively small class list falls well short of the burden necessary to defeat class certification. As to the hypothetical universe of "underinclusive" loan accounts, PenFed testified that while more difficult it may be possible to identify these persons, specifically that its members agree to notify PenFed before changing their address or the address of their collateral. Martin Dep. at 52:4-21. Regardless, the inability to identify a small number of persons who hypothetically moved out of West Virginia is not reason to deny those confirmed class members of a remedy.  The "underinclusive" group to the extent not identified will not receive class notice and their rights will not be impacted by this action. *See, e.g., Byrd v. Aaron's Inc.*, 784 F.3d 154, 166-67 (3d Cir. 2023) (reversing denial of class certification when district court had adopted report and recommendation concluding proposed class was underinclusive, explaining that the lower court had abused its discretion in grafting this requirement onto the ascertainability requirement and that "[i]ndividuals who are injured by a

7

defendant but are excluded from a class are simply not bound by the outcome of that particular action."), citing *Taylor v. Sturgell,* 553 U.S. 880, 884, 894, 128 S.Ct. 2161 (2008) ("Representative suits with preclusive effect on nonparties include properly conducted class actions."); *United States v. Mendoza,* 464 U.S. 154, 158 n. 3, 104 S.Ct. 568 (1984) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies on the same cause of action."). PenFed's contentions lack merit, and the Court should expect PenFed to finalize its class list in a manner similar to most any financial institution that is party to a similar action under Rule 23.

    C. <u>Class members' claims, including those under Sections 127 and 124 of the WVCCPA which are derivative of the Section 128 claims, are uniform</u>

PenFed's final attack on Plaintiff's proof of ascertainability goes to the Defendant's concern with the "threats" and "representations" at issue in those claims. But as explained above, Plaintiff's Section 127 and 124 claims are directly related to and derivative of Defendant's assessment and collection of the fees under Section 128, and have nothing to do with any specific, individualized threats or representations made to Plaintiff or specific class members. Again, these claims allege that PenFed misrepresented and actually collected fees that it could not lawfully charge and threatened to take action otherwise prohibited by the WVCCPA. Just like the subsection 128 claims, the claims are common as to the class and this argument is simply a red herring that does not defeat class certification.

**II.  Plaintiff's claims are typical of those of the class and do not involve individualized allegations of fraud or threats**

Again, Mr. Boczek does not bring any individualized claims based on his specific interactions with PenFed employees. All of his claims, for himself and on behalf of the putative class, arise solely from his allegations that PenFed assessed the illegal fees and made misrepresentations as to those fees on a uniform, classwide basis. As such, there are no typicality concerns and Plaintiff has satisfied Rule 23(a)(3).

8

### III. Plaintiff has established predominance and superiority.

Plaintiff has also demonstrated that common issues predominate and that a class action is the superior way of litigating this case. *See Sheridan*, 2025 WL 2055750, at *7 (finding class action superior to any method available as defendant's "liability is a common question that would be inefficient to continuously litigate and risk nonconformity in decisions.") Defendant quibbles with the common issues Plaintiff identifies, but the simplicity of these issues only highlights the ease of resolving this case, either through summary judgment or trial.

Without providing proof that any particular class member may actually be entitled to tens of thousands of actual or statutory damages, PenFed suggests that individual trials are superior to the class action device here because of the potential for a $1,357.66 per violation penalty (after applying an inflation adjustment). This court and the Southern District of West Virginia have long recognized as to WVCCPA claims in particular the class action device is superior for managing them because of their relatively small value and uniformity. *Adkins v. Midland Credit Mgmt.*, C-5:17-041017, 2019 WL 1549712, at *5 (S.D. W. Va. Apr. 9, 2019) ("Given the number of essentially identical claims, all seeking relatively low statutory damages, class resolution is a superior—and indeed, ideal—method of resolution. Few class members would be likely to seek relief absent class resolution, and the costs to the parties and to judicial resources involved in individual resolution would be untenable"); *Edge v. Roundpoint*, No. 1-21-cv-122, 2024 WL 1349032, at *7 (N.D. W.Va. Mar. 29, 2024) (Kleeh, J.) (recognizing liability is a common question and that the "cost of proceeding individually would likely be impractical and cost prohibitive").

Defendant further suggests that resolving the claims on a class-wide basis is "disadvantageous" in that it would "strip" the WVCCPA of its efficacy because the absent class members did not provide pre-suit notice to Defendant (nor were they required to do so). Def. Br. at 23. Notably, Defendant cites no authority for this proposition, which is directly contrary to the

9

WVCCPA's notice-and-cure provision, W. Va. Code § 46A-5-108, that simply refers to the requirements of an "action" being "brought". The right-to-cure notice requirement is non-jurisdictional, *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2019 WL 1370872, at *3 (S.D. W. Va. Mar. 26, 2019), and it has been assumed that its purposes are to "provide defendants with notice and an opportunity to minimize litigation costs and their potential exposure. . ." *Oakley v. Coast Prof., Inc*, 570 F.Supp. 3d 365, 371-72 (S.D. W. Va. 2021).

Moreover, the notice-and-cure provision is inapplicable because absent class members are not parties "joined" to a class action. *See Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991) (recognizing absent class members are not parties within the meaning of Rule 23). Indeed, a requirement for maintaining a class action is that "*joinder* of all members is impracticable." Fed. R. Civ. P. 23(a)(1) (emphasis added). Because no absent class member is being "joined" as an additional class representative, none is required to give pre-suit notice. It is well settled that exhaustion of administrative remedies, including notice requirements, by the named plaintiff satisfies any pre-suit exhaustion requirements for all class members. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 411 n.8 (1975) (rejecting contention that members of class who did not exhaust administrative process with the EEOC could receive benefits from class action, noting the "Courts of Appeals that have confronted the issue are unanimous in recognizing that backpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members," and citing cases). *See also Hermida v. Archstone*, 950 F.Supp. 2d 298 (D. Mass. 2013) (demand letter from individual consumer satisfied notice requirements under Massachusetts Consumer Protection Act as to putative class); *Schorr v. Countrywide Home Loans, Inc*., 697 S.E.2d 827, 828, 287 Ga. 570, 571–72 (Ga. 2010) (plaintiff's demand and filing of lawsuit satisfied pre-suit condition for written demand for entire class); *In

*re Alford Chevrolet-Geo*, 997 S.W.2d 173, 178 (Tex. 1999) (consumer permitted to provide presuit notice on behalf of putative class); *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 676 P.2d 1060 (1984) (consumer's notification of fraudulent policy pursuant to Legal Remedies Act qualified to maintain class action since response failed to address claims of all similarly situated consumers).

Defendant's far-fetched argument would effectively eradicate WVCCPA class actions; this Court should reject it and certainly not permit it to defeat class certification in this readily certifiable case. Even if the notice-and-cure provision were required for each class member in class action proceedings, which actions are specifically contemplated in the damage provisions of the WVCCPA (*see* W. Va. Code 46A-5-101(1) ("Provided, however, That in a class action the aggregate limits on the amount of the penalty set forth above shall be applied severally to each named plaintiff and each class member such that no named plaintiff nor any class member may recover in excess of the greater of $175,000 or the total alleged outstanding indebtedness"), the notice here was sent by Mr. Boczek in his representative capacity on behalf of the putative class and, therefore, PenFed had an opportunity to make a class-wide cure offer. *See* **Exh. C**, Right to Cure Offer. It failed to do so.

## CONCLUSION

Plaintiff has met his burden of demonstrating that this case meets all the requirements for class certification. By marked contrast, Defendant has come forth with no counterevidence in support of its arguments opposing certification. For the foregoing reasons and those set forth in his initial brief, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Class Certification and appoint him as class representative and his attorneys as class counsel.

Dated: September 12, 2025                                   Respectfully submitted,

/s/ Patricia M. Kipnis
Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Road Suite 300
Cherry Hill, NJ 08002
(215) 274-9331
PKipnis@baileyglasser.com

Jonathan R Marshall (WVSB #10580)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
JMarshall@baileyglasser.com

James L. Kauffman (admitted *pro hac vice*)
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
JKauffman@baileyglasser.com

Denali S. Hedrick (WVSB #14066)
Bailey & Glasser LLP
94 Long Street, Suite 200
Westover, WV 26501
(304) 345-6555
DHedrick@baileyglasser.com

Jason E. Causey (WVSB #9482)
Katz Kantor Stonestreet & Buckner, PLLC
206 South Walker St.,
Princeton, WV 24740
(304) 431 4050
(304) 431 4060
JCausey@kksblaw.com

*Attorneys for Plaintiff and
the Proposed Class*

12

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG DIVISION

**JOSEPH J. BOCZEK, on behalf of**
**Himself and all others similarly situated,**

    **Plaintiff,**

                                                                      **CIVIL ACTION NO. 1-23-CV-043**
**v.**                                                  **Chief District Judge Thomas S. Kleeh**

**PENTAGON FEDERAL CREDIT UNION d/b/a**
**PENFED,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    I, Patricia M. Kipnis, counsel for Plaintiff and the Proposed Class in the above-referenced civil action, do hereby certify that on this 12th day of September, 2025, I electronically filed the document titled ***Plaintiff Joseph Boczek's Reply In Further Support Of His Motion For Class Certification*** with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Brian J. Moore (WV State Bar # 8898)<br>
Kinsey M. Novak Booth (WV State Bar # 14661)<br>
Dinsmore & Shohl LLP<br>
P.O. Box 11887<br>
707 Virginia Street East, Ste. 1300<br>
Morgantown, WV 26501<br>
brian.moore@dinsmore.com<br>
kinsey.booth@dinsmore.com<br>
<br>
Michael A. Graziano (admitted *pro hac vice*)<br>
Sarah A. James (admitted *pro hac vice*)<br>
Eckert Seamans Cherin & Mellott, LLC<br>
1717 Pennsylvania Ave., NW, 12th Floor<br>
Washington, DC 20006<br>
mgraziano@eckertseamans.com<br>
sjames@eckertseamans.com<br>
<br>
*Attorneys for Defendant*

                                                                       */s/ Patricia M. Kipnis*
                                                                       Patricia M. Kipnis (WVSB #12896)