**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**JOSEPH BOCZEK,**

        **Plaintiff,**

**v.**                      **CIVIL ACTION NO. 1:23-CV-43
                                       (KLEEH)**

**PENTAGON FEDERAL CREDIT UNION
d/b/a PENFED,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION [ECF NO. 100]**

Pending before the Court is a motion for class certification [ECF No. 100]. For the reasons discussed herein, the Court **GRANTS** the motion.

## I.    BACKGROUND

On or about June 22, 2022, Plaintiff Joseph Boczek entered into a Promissory Note with Pentagon Federal Credit Union ("PenFed" or "Defendant") to refinance a vehicle loan. ECF No. 74, Amend. Compl. at ¶ 21. PenFed is a federal credit union which acts as both a lender and a loan servicer. Id. at ¶ 16. Accordingly, PenFed both "originates and refinances loans, and exercises the servicing rights to collect monthly payments, charge fees, [and] enforce the loan and other credit contracts." Id.

Plaintiff alleges he was charged a $5.00 "pay-to-pay" fee for making his monthly loan payment over the telephone. Id. at ¶ 22.

However, neither the Promissory Note nor a statute authorizes PenFed to impose the $5.00 fee. Id. at ¶¶ 19-20, 23. Moreover, PenFed charged Plaintiff $5.00 to make his monthly payment over the phone, but Plaintiff alleges that the pay-to-pay transaction costs $0.30 per transaction. Id. at ¶ 18. Thus, Plaintiff alleges that PenFed profits off the pay-to-pay fees. Id.

Based upon this practice, Plaintiff filed suit alleging PenFed engaged in repeated violations of Article 2 of the West Virginia Consumer Credit and Protection Act, including W. Va. Code §§ 46A-2-128, 46A-2-128(c), 46A-2-127, 46A-2-127(g); 46A-2-127(d), and 46A-2-124(f).

## II.  **RELEVANT PROCEDURAL HISTORY**

On May 16, 2023, Plaintiff Joseph Boczek, on behalf of himself and all persons similarly situated filed a class action complaint alleging violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). ECF No. 1. On August 7, 2023, PenFed moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 5. On March 26, 2024, the Court entered its *Memorandum Opinion and Order Denying Defendant's Motion to Dismiss [ECF No. 5]*. ECF No. 40. Thereafter, Defendant answered Plaintiff's Complaint on April 8, 2024. ECF No. 41.

On May 22, 2024, Plaintiff moved to amend his class action complaint [ECF No. 58]. Over Defendant's opposition [ECF No. 62],

the Court granted Plaintiff's motion to amend. ECF No. 73. Accordingly, Plaintiff filed his *Amended Class Action Complaint* [ECF No. 74] on November 15, 2024. PenFed answered the amended complaint on November 27, 2024. ECF No. 78.

On August 8, 2025, Boczek filed *Plaintiff's Motion for Class Certification* with supporting memorandum [ECF Nos. 100, 101]. PenFed filed its response in opposition to class certification on August 29, 2025 [ECF No. 102] and Plaintiff replied in support of his Motion on September 12, 2025 [ECF No. 103]. The Court convened for a hearing on the subject motion on October 20, 2025. Plaintiff's Motion for Class Certification is thus fully briefed and ripe for review.

## III. <u>DISCUSSION</u>

### i. The Proposed Class

The Plaintiff defines the proposed class as follows:

> All persons (1) with West Virginia addresses; (2) with a loan or line of credit, irrespective of the particular type of loan or extension of credit, where the lender, broker, servicer or sub-servicer is Penfed; and (3) who paid a fee to Penfed for making a payment by telephone, by interactive voice recognition (IVR), or by other electronic means, during the applicable statute of limitations through the date a class is certified.

ECF No. 101 at p. 2; ECF No. 74, Amend. Compl. at ¶ 28.

### ii. Applicable Law

Plaintiff has the burden of demonstrating that the requirements for class-wide adjudication under Rule 23(b)(3) have

3

been met. <u>Krakauer v. Dish Network, LLC</u>, 925 F.3d 643, 654 (4th Cir 2019) (citing <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 33 (2013)). Under Rule 23(a), the Plaintiff must first demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. R. 23(a).

Second, to obtain class certification under Rule 23(b)(3), the Plaintiff must also demonstrate that questions of law or fact common to the class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Finally, the Plaintiff must demonstrate that the members of the class are readily identifiable. <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 358 (4th Cir. 2014). District courts must perform a "rigorous" analysis to determine whether the class requirements are met. <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982).

### iii.  Rule 23(a) Requirements

The Court first analyzes whether Plaintiff has satisfied the four requirements of Rule 23(a).

4

### 1.   Numerosity

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'" Kay Co., LLC v. EQT Prod. Co., No. 1:13 CV 151, 2017 WL 10436074, at *6 (N.D.W. Va. Sept. 6, 2017) (alteration in original) (quoting Fed. R. Civ. P. 23(a)(1)). "Impracticable does not mean impossible." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Rather than relying on numbers alone, courts should examine the specific facts of the case. Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 US. 318, 330 (1980). Relevant factors include "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." Christman v. Am. Cyanamid Co., 92 F.R.D. 441, 451 (N.D.W. Va. 1981); see also In re Serzone Prods. Liab. Litig., 231 F.R.D. 221, 237 (S.D. W. Va. 2005) (listing same factors).

"No specified number is needed to maintain a class action under [Rule] 23 . . .." Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967). Moreover, Plaintiff need not "know precisely the size of the class, rather it is necessary only to show that the class is so large as to make joinder impracticable." McGlothlin v. Connors, 142 F.R.D. 626, 632 (W.D. Va. 1992) (citations omitted). "Because there is no bright line test for determining numerosity, the determination rests on

this Court's practical judgment in light of the particular facts of the case." <u>Mey v. Matrix Warranty Sols., Inc.</u>, No. 5:21-CV-62, 2023 WL 3695593, at *6 (N.D.W. Va. Mar. 23, 2023).

Here, the Court concludes that Plaintiff has satisfied his burden of demonstrating that the proposed class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is satisfied because PenFed's records reflect there are at least 1,497 fees collected from 422 consumer loans. Defendant does not challenge the numerosity of the potential class, but rather focuses its opposition on the ascertainability, typicality, and predominance or superiority of the proposed class. <u>See</u> ECF No. 102. Accordingly, the Court **FINDS** the proposed class sufficiently numerous.

## 2.  Commonality

Rule 23 next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Demonstrating class commonality is a low hurdle. . . [and] requires only a single issue common to the class." <u>Mey</u>, 2023 WL 3695593, at *6. Rule 23(a)(2)'s commonality requirement, however, "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 609 (1997). Accordingly, the Court will consider commonality in its discussion of predominance below.

6

### 3.  Typicality

Rule 23 also requires that "the claims . . . of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (quoting Falcon, 457 U.S. at 156). A plaintiff must show "(1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." Baxley v. Jividen, 338 F.R.D. 80, 88 (S.D.W. Va. 2020) (Chambers, J.). But, "[t]he class representatives and class members need not have suffered identical injuries or damages." In re Serzone Prods. Liab. Litig., 231 F.R.D. at 238 (emphasis added) (citing United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc., 152 F.R.D. 518, 522 (S.D.W. Va. 1994)). "A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" Kay Co., LLC, 2017 WL 10436074, at *9 (quoting Zapata v. IBP, Inc., 167 F.R.D. 147, 160 (D. Kan. 1996)).

Here, Plaintiff has satisfied his burden of demonstrating that his claims are typical of the proposed class. Plaintiff contends his claims are typical of the class claims because they arise from PenFed's uniform debt collection practices and are based on the same legal theory. ECF No. 101 at pp. 8-9. Specifically, Plaintiff contends that the seven instances in which he was assessed a pay-to-pay fee during the statutory period are virtually identical to those of the proposed class. Id.

Defendant argues specifically that Plaintiff's claims under Sections 124(f), 127, 127(d), or 127(g) should not be part of any certified class claims because Boczek's claims of fraud or threats were not typical. ECF No. 102 at p. 19. PenFed contends that Boczek could not represent class members alleging deceptive or threatening statements because he testified that the PenFed employees did not make any fraudulent, deceptive, misleading, or threatening statements to him. Id.

In contrast, Plaintiff states in his reply briefing that he is not bringing any claims based upon specific representations made to him, but rather only claims common to the class. Plaintiff's claims under §§ 124(f), 127, 127(d), or 127(g) arise from PenFed's alleged assessment of illegal fees and misrepresentations regarding those fees which were made on a class wide basis. ECF No. 103 at p. 8. Because Boczek's claims under §§ 124(f), 127, 127(d), or 127(g) are not based upon personal

interactions, they are typical of the proposed class's claims, arise from the same practice or course of conduct, and are based on the same legal theory. Thus, the Court **FINDS** the typicality requirement satisfied.

### 4.    Adequacy of Representation

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy determination requires a two-pronged inquiry: (1) the named plaintiff must not have interests antagonistic to those of the class; and (2) the named plaintiff's attorneys must be qualified, experienced and generally able to conduct the litigation." Mey, 2023 WL 3695593, at *7. See Hewlett, 185 F.R.D. at 218. The latter inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Windsor, 521 U.S. at 625.

Here, Plaintiff has satisfied the burden of demonstrating adequacy for two reasons. First, because PenFed did not challenge the competency of Plaintiff's counsel, the Court presumes they are "competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." Hewlett v. Premier Salons Int'l, Inc., 185 F.R.D. 211, 218 (D. Md. 1997) (citing Zapata, 167 F.R.D. at 161).

Second, the interests of the proposed class representative do not conflict with those of the proposed class members. Boczek's

alleged injuries are the same as the proposed class – the alleged assessment of illegal pay-to-pay fees. Further, the proposed class members seek the same statutory damages as Boczek under the WVCCPA. Moreover, Boczek has represented the interests of the proposed class throughout the case by participating in discovery, assisting counsel, and sitting for a deposition. Accordingly, the proposed class representative's claims are "sufficiently interrelated to . . . ensure fair and adequate representation." Hewlett, 185 F.R.D. at 218 (citing Buford, 168 F.R.D. at 352).

### iv.  Rule 23(b) Requirements

The Court turns now to whether the Plaintiff has satisfied the requirements of Rule 23(b)(3).

#### 1.  Predominance

A class action can be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Lienhart, 255 F.3d at 147 (quoting Amchem Prods., Inc., 521 U.S. at 623). "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or

require individualized and fact-intensive determinations." <u>Kay Co., LLC</u>, 2017 WL 10436074, at *10.

"Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." <u>Id.</u> (citing <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 429 (4th Cir. 2003)). Critically, "[c]ommon liability issues may still predominate even when individualized inquiry is required in other areas." <u>Good v. Am. Water Works Co., Inc.</u>, 310 F.R.D. 274, 296 (S.D.W. Va. 2015) (citing <u>Gunnells</u>, 348 F.3d at 429). "At bottom, the inquiry requires a district court to balance common questions among class members with any dissimilarities between class members." <u>Id.</u> (citing <u>Gunnells</u>, 348 F.3d at 427-30).

Plaintiff asserts that common questions predominate over individual questions because the crux of the litigation is the legality of PenFed's debt collection activity – the charging and collecting of the pay-to-pay fees. ECF No. 101 at p. 11. Plaintiff contends the common questions of law and fact include:

> 1. Whether any statute expressly authorizes the Pay-to-Pay fees PenFed collected from Plaintiff and the class;
>
> 2. Whether Defendant misrepresented the amount of any claim;
>
> 3. Whether Defendant is entitled to any class-wide defense; and
>
> 4. Whether and in what amount consumers should receive a statutory penalty under the WVCCPA.

11

Id. at p. 8. Boczek also notes that courts routinely find predominance is met in cases involving allegedly illegal debt collection activity and standardized fees. Id.; see Alig v. Quicken Loans Inc., 2017 WL 5054287, at *14 (N.D.W. Va. July 11, 2017) (Bailey, J.).

Defendant argues that Boczek cannot establish predominance because several key issues cannot be resolved on a class-wide basis. ECF No. 102 at p. 21. Specifically, Defendant asserts that it must be determined on an individual basis (1) whether each class member's transactions were for personal, family, or household purposes; (2) whether the individual transactions have sufficient ties to West Virginia; and (3) whether PenFed made threatening or fraudulent statements to each class member. Id. Defendant also disputes that issues two through four raised by Plaintiff constitute common questions of law and fact. Id. PenFed contends the only concrete issue that could be resolved on a class-wide basis is whether the pay-to-pay fees are statutorily authorized. Id.

First, for the reasons discussed supra regarding ascertainability, the Court disagrees that any of the three issues raised by Defendant supersede the common questions of law and fact in this case. Second, the Court agrees that Plaintiff set forth four common questions. Of these common questions, the first three are strictly limited to liability. If the answer to the first

12

question is yes, PenFed may not be liable under the WVCCPA. But if the answer is no, that ruling would determine liability for all class members and then require assessment of the remaining common questions, including any applicable defenses raised in PenFed's Answer to the Amended Complaint.

Defendant contends that the potential application of statutory penalties weighs against class certification. ECF No. 102 at pp. 21-22. To support this contention, Defendant cites to a Ninth Circuit case which found as a matter of first impressions that, aggregated statutory damages awards in class actions are subject to constitutional due process limitations, "in certain extreme circumstances." Wakefield v. ViSalus, Inc., 51 F.4th 1109, 1121 (9th Cir. 2022). Such extreme circumstances are not apparent at this phase of litigation and furthermore would not prevent this Court from finding predominance. "Courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." Kay Co., LLC, 2017 WL 10436074, at *11.

Conducting the requisite balancing test here, the Court concludes that the common questions of law and fact presented in this case outweigh the claimed dissimilarities among class members that could require individualized inquiries. Thus, predominance is satisfied.

### 2.  Superiority

Rule 23(b)(3) also requires that the proposed class action be superior to other methods of adjudication so that the class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Windsor, 521 U.S. at 615 (quotation omitted). When determining whether a class action is superior under Rule 23(b)(3), courts consider four relevant guidelines:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); see also Hewlett, 185 F.R.D. at 220 (noting that these subsections are "guidelines").

Defendant argues that a class action is not the superior method of resolving the claims in this case. First, Defendant claims that there will be practical difficulties weeding out class members who do not have viable claims, which could expose PenFed to liability for lawful transactions. Again, for the reasons discussed supra, the Court disagrees that concerns for weeding out

14

loans not used for consumer purposes[1] or not located in West
Virginia at the relevant time supports individual adjudication
over a class action. Second, Defendant claims class action
superiority is reduced in this case because the WVCCPA provides
significant incentive to encourage individuals with *de minimis*
damages to sue. Specifically, Defendant contends that a
hypothetical plaintiff with actual damages of $240.00 could
receive up to $65,407.69 in total damages plus attorney's fees.
Thus, PenFed argues there is sufficient motivation for individual
litigation. Third, Defendant contends that class action treatment
will defeat the purpose of the WVCCPA's notice-and-cure provision.

First, liability is a common question here which would be
inefficient to litigate approximately 422 times. Considering
PenFed's culpability in a class liability phase would allow for
consistency. Despite Defendant's contention that the statutory
damages are enough motivation, the cost of proceeding individually
would likely be impractical and cost prohibitive. Thus, without a
class action, the potential class members would likely not
vindicate their rights and obtain relief – if any.

Second, "the interest in personal control of the litigation
is minimal in this context." Soutter v. Equifax Info. Servs., LLC,
307 F.R.D. 183, 218 (E.D. Va. Apr. 15, 2015) (citation omitted).

---

[1] The class only includes those with consumer loans.

In addition, "[t]o the extent any individual does wish to retain control, . . . the opt out mechanism will be available." Id. at 218. This is particularly so where, as here, the alleged injuries stem from the same course of conduct and raise the same legal and factual questions. Further, allowing class actions does not strip the efficacy of the WVCCPA's notice-and-cure provision. Boczek is the only named plaintiff in this matter and provided PenFed notice and an opportunity to cure the claimed WVCCPA violations without litigation. Requiring every class member to provide pre-suit notice would effectively prohibit WVCCPA class actions; yet the WVCCPA contemplates class actions. See W. Va. Code, § 46A-5-101. Further, the Court can find no West Virginia authority requiring absent class members to provide pre-suit notice. Nonetheless, because Boczek sent the letter in a representative capacity, Defendant was on notice of the potential class action litigation and had an opportunity to make a class-wide cure offer. See ECF No. 103 at p. 11.

Third, allowing members of the proposed class to pursue a class action "serves the interest of judicial economy." Thomas v. FTS USA, LLC, 312 F.R.D. 407, 426 (E.D. Va. Jan. 7, 2016). "It saves time and resources to resolve the issues presented on a class wide basis rather than to" resolve several hundred motions for summary judgment "on the same issues." Id. In other words, there is a strong desirability to concentrate the litigation of these

claims in this Court for "consolidated resolution of the common issues." Id.; See Fed. R. Civ. P. 23(b)(3)(C) (requiring courts to consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum").

Finally, "the similarity of factual and legal issues indicates that a class action would be manageable . . . ." See Fed. R. Civ. P. 23(b)(3)(D) (requiring courts to consider "the likely difficulties in managing a class action"). As previously discussed, this case presents four common questions of law and fact that predominate over the individualized question of damages or potential defenses. Answering these common questions in one class action will not only be manageable, but also more efficient. In sum, the Plaintiff's proposed class action is far superior to individual litigation.

### 3.  Ascertainability

Although not specifically required, the Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" Adair, 764 F.3d at 358 (citations omitted). This implied rule has regularly been described "as an 'ascertainability' requirement." Id. (citations omitted). "However phrased, the requirement is the same. A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id. (citations omitted). "The plaintiffs

17

need not be able to identify every class member at the time of certification." Id. "But if class members are impossible to identify without extensive and individualized fact finding or mini trials, then a class action is inappropriate." Id. (cleaned up) (citations omitted).

Here, PenFed contends that the proposed class is not ascertainable for three reasons: (1) fact-intensive inquiries are necessary to determine whether the subject loans were used primarily for personal, family, or house purposes; (2) there is no administratively feasible method to determine whether a loan account has sufficient ties to West Virginia; and (3) allegations of fraudulent or threatening statements are individualized claims. ECF No. 102. For the following reasons, each argument fails.

First, an individualized inquiry into the primary purpose for each loan is not necessary because the proposed class only contains consumer loans and a small amount of personal credit cards. Boczek, as the putative class member, represents the proposed class because he had a consumer auto loan. Because the class is limited to consumer loans, it is not necessary to individually determine if the loans were incurred for personal, family, or household purposes. Furthermore, PenFed's own records established that there were 1,497 fees collected on 422 consumer loans.

Second, the Court is not persuaded that PenFed's records cannot be formulated to ensure only West Virginia residents are

18

included in the class. The record reflects that there are ascertainable methods to ensure the class is neither over-nor-under-inclusive. Regarding concerns that the class is overinclusive, PenFed's corporate representative testified that any fees which were not paid by a then-West Virginia resident could be removed from the class. ECF No. 103 at p. 7; ECF No. 102 at p. 10 ("PenFed could theoretically filter the results of its search to remove any of the 422 members who did not live in West Virginia at the relevant time by "go[ing] back and look[ing] at the promissory note documentation" or "run[ning] an additional query[.]" This is possible because PenFed tracks address changes for its borrowers. Confirming the residency of 422 borrowers is not so burdensome to find the class unascertainable.

As for concerns that the class could be underinclusive, if there are individuals who would fall into the class but have since moved out of West Virginia, this class action will not impact their rights, and they will not receive class notice. Concerns for a small hypothetical group of borrowers who paid the pay-to-pay fees on their consumer loans during the applicable statute of limitations period but who have left West Virginia, does not outweigh the benefits of litigating on a class basis for the approximate 422 consumers.

Third, Plaintiff's claims under §§ 124(f), 127, 127(d), or 127(g) are ascertainable because they arise from PenFed's alleged

assessment of illegal fees and misrepresentations regarding those fees which were made on a class wide basis. ECF No. 103 at p. 8. The alleged fraud, threats, or misrepresentations are not based upon any individual interactions. Thus, these claims are common to the class.

Accordingly, the members of the proposed class are readily identifiable, and Plaintiff's proposed class satisfies the ascertainability requirement.

### 4.    Definition and Appointments

For the reasons discussed, the Court will certify the following class:

> All persons (1) with West Virginia addresses;
> (2) with a loan or line of credit,
> irrespective of the particular type of loan or
> extension of credit, where the lender, broker,
> servicer or sub-servicer is Penfed; and (3)
> who paid a fee to Penfed for making a payment
> by telephone, by interactive voice recognition
> (IVR), or by other electronic means, during
> the applicable statute of limitations through
> the date a class is certified.

The Court excludes any person involved in related litigation, pursuing the same claim, against the same defendant, based on the same facts and circumstances.

Next, the Court appoints Joseph Boczek to serve as class representative because his claims are typical of the class as required by Rule 23(a)(3), and he will fairly and adequately protect the interests of the class as required by Rule 23(a)(4). And considering the requirements of Rule 23(g)(1)(A), the Court

concludes that James Kauffman, Jonathan Marshall, and Patricia Kipnis of Bailey & Glasser LLP, and Jason Causey of Katz, Kantor, Stonestreet & Buckner, PLLC are knowledgeable and experienced in class action litigation, making them well qualified to represent the Plaintiffs. Accordingly, the Court appoints James Kauffman, Jonathan Marshall, Patricia Kipnis, and Jason Causey as class counsel.

## IV.  **CONCLUSION**

Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. For the reasons discussed above, the Court **GRANTS** the motion for class certification [ECF No. 100]. The Court **CERTIFIES** this case as a class action pursuant to Rule 23(b)(3); **APPOINTS** Joseph Boczek as class representative; and **APPOINTS** James Kauffman, Jonathan Marshall, Patricia Kipnis, and Jason Causey as class counsel pursuant to Rule 23(g).

The Court further **ORDERS** class counsel to submit a proposed Notice of Certification to the defined class to be mailed to members of the class in accordance with Rule 23(c)(2)(B) within 30 days of the date of this Order.

The Court will enter a separate order directing the parties to confer on a schedule to govern the remainder of the case.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: November 3, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA